UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                 **CENTRAL DIVISION AT LEXINGTON**

LUTHER EVERETT BENARD, JR.,    )
                               )
     Plaintiff,                ) Action No. 5:17-cv-0096-JMH
                               )
v.                             )
                               ) **MEMORANDUM OPINION AND ORDER**
NANCY A. BERRYHILL,            )
Acting Commissioner of         )
Social Security,               )
                               )
     Defendant.                )

                    **    **    **    **    **

This matter is before the Court on the parties' cross-Motions for Summary Judgment (DEs 7 and 9) on Plaintiff's appeal of the Commissioner's denial of his current application for Disability Insurance Benefits (DIB).[1] The matter having been fully briefed by the parties is now ripe for this Court's review pursuant to 42 U.S.C. § 405(g).

**I.   Overview of the Process and the Instant Matter**

In determining whether an individual is disabled, an Administrative Law Judge ("ALJ") uses a five step analysis:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994)(citing 20 C.F.R. § 404.1520(1982)).

## II. Standard of Review

When reviewing a decision made by the ALJ, the Court may not "'try the case de novo, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). "The ALJ's findings are conclusive as long as they are supported by substantial evidence." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)

(citations omitted). Substantial evidence "'means such relevant evidence as a reasonable mind might accept.'" *Foster*, 279 F.3d at 353 (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1991)).

**III. Facts**

Plaintiff applied for disability insurance benefits (DIB) under Title II of the Social Security Act, alleging he became disabled on February 19, 2013 (Tr. 309). Administrative Law Judge (ALJ) Ronald M. Kayser denied Plaintiff's application. The agency's Appeals Council then denied Plaintiff's request that it review the ALJ's decision, rendering it the Commissioner's final decision for judicial review (Tr. 1-5, 173-84). *See* 20 C.F.R. § 404.981.

Plaintiff was 45 years old in February 2013, when he alleged he became disabled due to multiple heart attacks, diabetes, high blood pressure, and high cholesterol (Tr. 309, 327, 330). He graduated high school and had past relevant work as a parts manager, a skilled, light job (Tr. 227, 331). *See* 20 C.F.R. §§ 404.1567 (exertional levels), 404.1568 (skill levels).

In 2006, Plaintiff had surgery to place four stents in his heart (*see* Tr. 395). In 2007, he received an implantable cardioverter defribillator (more commonly known as a "pacemaker") (*see* Tr. 598, 611-12). In August 2008, Plaintiff experienced chest pain after surgeons turned his pacemaker off and then back on in

relation to a minimally invasive lower back surgery (Tr. 395-97, 422-23).

Plaintiff did not seek medical treatment for chest pain again until March 2012, when he saw cardiologist James Crager, M.D., with complaints of periscapular pain with activity (Tr. 698-701). Plaintiff underwent stent placement after studies showed narrowing (stenosis) in three arteries (Tr. 711-16). Studies also revealed severe left ventricular systolic dysfunction (heart failure), with an ejection fraction of 20 to 25 percent (Tr. 715). In April 2012, Plaintiff told Dr. Crager that, with his medications, he had experienced no recurrent chest discomfort and had minimal lethargy (Tr. 914).

Plaintiff returned to see Dr. Crager in June 2012 with complaints of significant fatigue but no overt chest discomfort or increased shortness of breath (Tr. 912). In October, Plaintiff told Dr. Crager that he had not experienced any chest discomfort or palpitations since his March stent placement (Tr. 910). He asked Dr. Crager about disability, and Dr. Crager wrote that Plaintiff "would be, from a cardiac standpoint, disabled from his current occupation" and should "apply through the SSI Department otherwise" (Tr. 910). The Court notes Plaintiff continued to work at the same occupation for another four months, until he retired in February 2013 and then sought disability benefits (*see* Tr. 200, 201, 309).

Plaintiff's medical record subsequent to his alleged onset of disability is rather sparse. In June 2013, Plaintiff told Dr. Crager that, other than one shock from his pacemaker that spring, he had felt well (Tr. 908). In March 2014, he again reported no chest discomfort or palpitations, and he was not interested in new heart medication (Tr. 982). Updated studies showed somewhat improved (30 to 35%) ejection fraction (Tr. 998-99). Plaintiff told Dr. Crager in August 2014 that during a trip to Hawaii he had experienced some rectal bleeding (Tr. 1200). He did not report any cardiac issues, yet Dr. Crager opined that, "from a cardiac standpoint, [Plaintiff] should be considered 100% disabled for any form of labor" (Tr. 994). In March 2015, Plaintiff again told Dr. Crager that he had not experienced any chest discomfort or palpitations, but he continued to "struggle" with his pacemaker (Tr. 1026). Updated studies showed an improved (but still abnormal) ejection fraction of 35% (Tr. 1027).

Plaintiff had a health maintenance visit with Larissa Hufnagel, M.D. in November 2015 (Tr. 1244-49). He described his overall health as "fair" and reported he exercised regularly (Tr. 1244). He denied chest pain, shortness of breath with exertion, and lower extremity swelling (Tr. 1247). One month later, however, Plaintiff told Dr. Crager that he had little quality of life and experienced shortness of breath with any activity (Tr. 1251). In January 2016, Dr. Crager completed a form opinion indicating that

Plaintiff met the requirements of the *per se* disabling impairment listed at section 4.04 in the agency's Listing of Impairments, *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 4.04, due to congestive heart failure, severe left ventricular dysfunction, and coronary artery disease (Tr. 1235).

As part of Plaintiff's application for disability benefits, State agency physicians P. Saranga, M.D., and Donna Sadler, M.D., reviewed the record to evaluate his functional abilities (Tr. 240-42, 251-53). *See* 20 C.F.R. § 404.1527(e)(2)(i) (State agency medical consultants "are highly qualified physicians. . . who are also experts in Social Security disability evaluation"). Both doctors agreed that Plaintiff had functional limitations consistent with a range of sedentary work (Tr. 240-42, 251-53). *See id*. § 404.1567(a).

At the January 2016 hearing before the ALJ, Plaintiff testified that he was very weak in the mornings and sometimes did not have the energy to get out of his chair (Tr. 207). However, Plaintiff said that he played golf twice a week and mowed his 5.5-acre lawn (Tr. 207, 209). He estimated he could walk one-quarter of a mile on concrete, one-half of a mile on grass, and three-quarters of a mile on even ground (Tr. 215); and could stand for 15 minutes at a time, sit two hours at a time, and carry up to 50 pounds (but only rarely) (Tr. 215-17). He testified he had chest

pain three days per week, with each episode lasting between several minutes and many hours (Tr. 222).

The ALJ found that Plaintiff failed to establish his entitlement to disability benefits under the agency's five-step sequential evaluation process (Tr. 175-84). *See generally* 20 C.F.R. § 404.1520(a)(4). As relevant here, the ALJ found that Plaintiff's impairments did not meet or medically equal a *per se* disabling listed impairment (Tr. 175-76). Instead, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform a range of light work (Tr. 176). Relying on a vocational expert's testimony, the ALJ found that this would allow Plaintiff to perform work existing in significant numbers in the national economy (Tr. 183; *see* Tr. 230-31). The ALJ thus concluded at step five that Plaintiff had failed to meet the strict standard to establish disability under the Act (Tr. 184).

## IV. Analysis

### a. The ALJ's determination that Plaintiff is not per se disabled pursuant to Listing 4.04 was supported by substantial evidence

Plaintiff raises two arguments in his challenge to the ALJ's decision. He argues that the ALJ failed to give adequate reasons for discounting the treating physician's statement that Plaintiff meets the requirements of Listing 4.04. He further argues that the ALJ formulated a less restrictive RFC than any opinion offered in the record, thus, the RFC was not based upon substantial

evidence. For the reasons stated below, the Court disagrees with Plaintiff.

Listing 4.04 sets forth *per se* disabling impairments. "Because satisfying the listings during the third step yields an automatic determination of disability based on medical findings, rather than a judgment based on all relevant factors for an individual claimant, the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (unpublished).

The ALJ explicitly considered whether Plaintiff met the requirements of Listing 4.04 but found that he did not (Tr. 175). Listing 4.04 requires that Plaintiff provide specific medical evidence related to his cardiac condition. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.04. The ALJ found that "[t]he evidence of [Plaintiff's] ischemic heart disease is insufficient to satisfy the requirement of listing 4.04 relating to: the results of exercise tolerance testing; the frequency of ischemic episodes; or the severity of coronary artery disease (Tr. 175). Thus, the ALJ reasonably concluded that Plaintiff had failed to provide the requisite medical evidence to establish disability under Listing 4.04. *Id*.

Plaintiff does not challenge these findings. Rather, he argues that the ALJ should have adopted Dr. Crager's opinion that he met Listing 4.04. The ALJ considered this opinion (Tr. 180), but ultimately rejected it because it "constitute[d] administrative findings on the ultimate issue of disability," which are reserved to the Commissioner (Tr. 182).

Opinions on an issue reserved to the Commissioner, even opinions by a long-time treating physician, are never due special weight or significance. 20 C.F.R. § 404.1527(d)(1)-(3); SSR 96-5p, 1996 WL 374183, at *2. One of the issues that the agency's regulations explicitly reserve to the Commissioner is whether a claimant's medical condition(s) meet or medically equal a Listing. 20 C.F.R. § 404.1527(d)(2). Thus, Dr. Crager's opinion that Plaintiff met Listing 4.04 was not due controlling weight or special significance.

A review of Dr. Crager's opinion demonstrates why the Commissioner's regulations prohibit blind reliance on such opinions. Dr. Crager made no effort to describe the medical evidence required to establish disability under Listing 4.04 (see Tr. 1235). Instead, he merely listed diagnoses of congestive heart failure, severe left ventricular dysfunction, and coronary artery disease (see Tr. 1235). While such diagnoses are relevant to some of Listing 4.04's criteria, they do not address other requisite criteria. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.04; see also

*Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 527 (6th Cir. 2003) (unpublished) (recognizing that the diagnosis of a condition is insufficient to meet a Listing).

Plaintiff erroneously avers that there is no opinion in the record that Plaintiff did not meet Listing 4.04 (Pl. Br. 9). On the contrary, State agency reviewing physician Dr. Sadler explicitly considered whether Plaintiff met or medically equaled Listing 4.04 (see Tr. 250-51 (listing 4.04 under "Adult Listings Considered")). She then signed the Disability Determination and Transmittal form, indicating her opinion that Plaintiff did not meet or medically equal any Listing (Tr. 245). *See Sheets v. Bowen*, No. 88-3463, 875 F.2d 867, 1989 WL 47444, at *4 (6th Cir. 1989) (unpublished table opinion) (holding that signatures of State agency medical consultants on the disability determination and transmittal forms implicitly indicate that the claimant did not meet or equal the listing); *Branch v. Astrue*, No. 4:10CV0485, 2010 WL 5116948, at *8 (N.D. Ohio Dec. 9, 2010) (unpublished) (finding that an ALJ could rely on State agency medical consultants' signature on the Disability Determination and Transmittal form as an expert opinion to determine whether a claimant met a listing requirement (citations omitted)).

Plaintiff argues that "the opinion of the treating specialist [Dr. Crager] was accompanied by numerous and complicated cardiology records going back years and documenting a long-

standing treatment relationship" (Pl. Br. 7). Be that as it may, a long-standing treatment relationship is not one of the requisite criteria of Listing 4.04, and "numerous and complicated cardiology records," without medical evidence consistent with the requirements of Listing 4.04, are irrelevant to the step-three analysis. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.04.

Plaintiff next argues that the ALJ was required to develop the record further before rejecting Dr. Crager's opinion that he met Listing 4.04, by calling a medical expert to testify (Pl. Br. 8-9). Yet Plaintiff points to no law, regulation, or case in support of his argument. The Commissioner's regulations provide the ALJ the flexibility to determine whether a medical expert's testimony is needed in a particular case. 20 C.F.R. § 404.1527(e)(2)(iii) ("Administrative law judges may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to subpart P of part 404 of this chapter."(emphasis added)); *see also Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) ("The ALJ has discretion to determine whether additional evidence is necessary."). "Ordinarily, development should not be undertaken for the purpose of determining whether a treating source's medical opinion should receive controlling weight if the case record is otherwise adequately developed." SSR 96-2p, 1996 WL

374188, at *4. Thus, the ALJ was not required to develop the record further before he rejected Dr. Crager's opinion.

The ALJ reasonably rejected Dr. Crager's opinion that Plaintiff met Listing 4.04.

### b. The ALJ did not err in his assessment of the RFC

As part of the ALJ's assessment of Plaintiff's RFC, he considered the medical opinions relevant to Plaintiff's functional abilities (Tr. 181-82). *See* SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

State agency physicians Drs. Saranga and Sadler opined that Plaintiff could perform a range of sedentary work (Tr. 240-42, 251-53). Dr. Crager, on the other hand, opined that Plaintiff was "100% disabled for any form of labor" (Tr. 994). It was the ALJ's duty to resolve these conflicts in the evidence. *Perales*, 402 U.S. at 399 ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). The ALJ ultimately gave limited weight to Dr. Crager's opinion and discounted the opinions of Drs. Saranga and Sadler (Tr. 182). He concluded that Plaintiff had the

same non-exertional limitations opined by the State agency medical consultants but determined that the evidence supported an RFC for light work, not the sedentary work that Drs. Saranga and Sadler had indicated (Tr. 182; *compare* Tr. 176 *with* Tr. 240-42, 251-53).

Plaintiff protests that, because the ALJ's RFC assessment was less restrictive than opined by a medical source, it was unsupported by substantial evidence (Pl. Br. 11-12). Plaintiff's arguments rests on the mistaken premise that RFC is a medical finding. On the contrary, RFC is an **administrative** finding, not a medical finding. SSR 96-5p, 1996 WL 374183, at *2 (stating that some issues, such as RFC, are not medical issues regarding the nature and severity of an individual's impairment(s) but instead administrative findings that are dispositive of a case, and thus are reserved to the Commissioner); *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician."); *Deaton v. Comm'r of Soc. Sec.*, 315 F. App'x 595, 598 (6th Cir. 2009) (unpublished) ("[S]tatements from medical sources about what a claimant can still do are relevant evidence, but they are not determinative inasmuch as the ALJ has the ultimate responsibility of determining disability and residual functional capacity.").

The Sixth Circuit addressed a similar issue in *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194 (6th Cir. 2004) (unpublished). In

*Ford*, the claimant's treating physician opined that the claimant was totally disabled. *Id*. at 196. The ALJ rejected the treating physician's opinion and instead relied on the examination findings of a consultative examiner. *Id*. That consultative examiner did not provide an opinion of the claimant's limitations; he simply recorded his clinical findings. *See id*. at 196, 197. Although there was no opinion in the record supportive of the ALJ's RFC finding, the Sixth Circuit affirmed, noting that the RFC finding was supported by substantial evidence because "the ALJ relied upon considerable objective medical evidence in the record indicating that [the claimant] was capable of performing light work with restrictions." *Id*. at 197-98.

Here, as in *Ford*, the ALJ relied on considerable objective evidence in the record indicating that Plaintiff was capable of performing light work with restrictions (*see* Tr. 176-82). The ALJ noted, for example, the fact that Plaintiff denied any cardiac symptoms as recently as November 2015 (Tr. 181; *see* Tr. 1247); Plaintiff's ability to vacation in Hawaii in 2014 (Tr. 181; *see* Tr. 1200); Plaintiff's testimony that he could play golf twice a week, mow his 5.5 acre property, and use a weed eater (Tr. 181; *see* Tr. 207, 209-10); and other evidence inconsistent with Plaintiff's reportedly debilitating cardiac symptoms (Tr. 181). Thus the ALJ's limiting Plaintiff to light work was supported by substantial evidence in the record.

Even if the ALJ erred when he limited Plaintiff to light rather than sedentary work, the vocational expert identified sedentary jobs in the national economy that Plaintiff could perform (*see* Tr. 231-32). When the ALJ asked the vocational expert about a hypothetical individual with limitations consistent with the opinions of Drs. Saranga and Sadler (*compare* Tr. 231 *with* Tr. 240-42, 251-53), the vocational expert identified two occupations that such an individual could perform, representing 269,000 national positions (Tr. 232). The ALJ's rejection of the state agency opinions, if error, is therefore harmless because ultimately, the claimant could perform work existing in significant numbers in the national economy if the excluded limitations had been included in his RFC. *See Walton v. Astrue*, No. CIV.A. 10-185-GWU, 2011 WL 3847431, at *4 (E.D. Ky. Aug. 30, 2011) (unpublished); *Clore v. Astrue*, No. 1:08CV77-J, 2009 WL 1010875, at *4 (W.D. Ky. Apr. 14, 2009) (unpublished).

V. **Conclusion**

The Court having found no legal error on the part of the ALJ and that his decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED**.

Accordingly, **IT IS ORDERED** that Plaintiff's motion for summary judgment (DE 7) be, and the same hereby is, **DENIED**.

A separate judgment in conformity herewith shall this date be entered.

This the 14th day of February, 2018.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge